Edward C. FECHTER, Evelyn Hoffman, and Roderick M. Jackson, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 87–0506.

United States District Court, E.D. Pennsylvania.

Oct. 9, 1991.

Richard F. Stevens, Allentown, Pa., Joseph A. Bubba, Andrew W. Markley, Fitzpatrick, Lentz & Bubba, Oldrich Foucek, III, Butz, Hudders, Tallman, Steven, & Johnson, Allentown, Pa., for plaintiffs.

Chester J. Salkind, Washington, D.C., for movant.

John B. Langel, David S. Fryman, Anna–Maria Marshall, Ballard, Spahr, Andrews, & Ingersoll, Philadelphia, Pa., Paul A. Fischer, James F. Jorden, Jorden, Schulte & Burchette, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiffs Edward C. Fechter, Evelyn Hoffman, and Roderick M. Jackson, individually and on behalf of approximately 650 individuals similarly situated, and defendant Connecticut General Insurance Company ("Connecticut General") have filed cross-motions for summary judgment on both counts of plaintiffs' Third Amended Complaint pursuant to Fed.R.Civ.P. 56. Both parties have briefed the issues extensively, and the court held oral argument on September 5, 1991 in Easton, Pennsylvania. For the following reasons, the parties' motions for summary judgment are denied.

## BACKGROUND AND PROCEDURAL HISTORY

This case involves a class action brought by a group of former salaried employees of HMW Industries, Inc. ("HMW") and Hamilton Technology, Inc. ("HamTech") against the defendant Connecticut General. The following facts are undisputed. On or about March 31, 1984, HMW and HamTech (collectively the "Company") terminated the HMW pension plan (the "Plan") for salaried employees. At the time of termination, the fund was overfunded and had assets of approximately $26.5 million. As the Plan's actuary, Connecticut General determined that it would cost the Plan $16.9 million to purchase an annuity from Connecticut General (the "guaranteed annuity") to guarantee the benefits due Plan participants, leaving a surplus of approximately $9.6 million for distribution. On December 5, 1985, based on Connecticut General's calculations, HMW distributed

$1,705,492 or 17 percent of the surplus assets to Plan participants and $7,926,756 or 83 percent of the surplus assets to the Company.

On January 21, 1987, plaintiffs initiated this action against corporate defendants HMW, HamTech, and Clabir Corporation[1] ("Clabir"), and against individual defendants Henry Clarke (President of Clabir), Kenneth Bernhardt (President of HamTech), and Gloria Strantz (former manager of the benefits at HMW) (collectively the "Original Defendants"). In their original complaint, plaintiffs alleged that when HMW allowed most of the Plan's surplus assets to revert to the Company, the Original Defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1103(c), 1104, and 1344(d). Following a six-day non-jury trial, plaintiffs settled their claims against the Original Defendants. (HUYETT, J., Order Finding Settlement Fair, Reasonable, and Adequate, dated July 3, 1989; CAHN, J., Order That Final Judgment be Entered, date July 24, 1989).

During settlement negotiations with the Original Defendants, plaintiffs amended their Complaint adding Connecticut General as a party-defendant. (Plaintiffs' Second Amended Complaint). For purposes of clarity, plaintiffs further amended their complaint eliminating references to the Original Defendants. (Plaintiff's Third Amended Complaint).

In their Third Amended Complaint, plaintiffs challenge the conduct of Connecticut General on three bases. In Count I, plaintiffs allege, pursuant to 29 U.S.C. §§ 1103, 1104, and 1344(d)(1), that Connecticut General violated the terms of the Plan and provisions of ERISA by permitting any of the surplus assets to revert to the Company. (Complaint ¶¶ 33–48). In the alternative, plaintiffs claim in Count II that if the Plan did permit a portion of surplus assets to revert to the Company, Connecticut General breached its fiduciary duties, under 29 U.S.C. §§ 1104 and 1344(d)(3), by doctoring the allocation formula in favor of the Com-

pany, thereby reducing the amount of surplus assets to be distributed to Plan participants. (Complaint ¶¶ 49–55). Finally, plaintiffs allege in Counts I and II that Connecticut General breached its fiduciary duties under ERISA by charging an excessive premium for its guaranteed annuity, thereby decreasing the surplus assets available for distribution to Plan participants. (Complaint ¶¶ 42, 48, 54).

In January, 1991, plaintiffs and Connecticut General filed separate motions for summary judgment which this Court denied without prejudice to their refiling at the close of a ninety-day discovery period. (VAN ANTWERPEN, J., Order Denying Cross–Motions for Summary Judgment, date February 4, 1991). Discovery has now been completed, and the parties' cross-motions for summary judgment on both counts of plaintiffs' complaint are again before this Court.

## SUMMARY JUDGMENT STANDARD

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of

---

**1.** Clabir acquired HMW and HamTech in October 1983.

identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

## DISCUSSION

Connecticut General has moved for summary judgment in its favor on the grounds that (1) Connecticut General was not an ERISA fiduciary with respect to its performance of actuarial calculations in connection with the Plan termination; (2) even if Connecticut General is a fiduciary, Counts I and II of plaintiffs' Third Amended Complaint are time-barred by the applicable three-year ERISA statute of limitations; (3) Count I is barred by the law of the case; and (4) prior settlements with the Original Defendants have satisfied plaintiffs' claim for damages under Count II.

■ Plaintiffs have moved for summary judgment in its favor on the grounds that (1) Connecticut General violated the terms of the Plan and provisions of ERISA by permitting any of the surplus assets to revert to the Company; (2) even if the Plan did permit some reversion, Connecticut General violated ERISA by doctoring the allocation formula in favor of the Company; and (3) Connecticut General violated ERISA by exacting an excessive premium from the Plan for its guaranteed annuity.

In light of the facts in dispute and the incomplete record before us, we are unprepared to grant summary judgment in favor of either party. As discussed below, a full and adequate determination of the merits of the parties' claims requires full and adequate information concerning Connecticut General's relationship to the Plan and plaintiffs' actual knowledge of Connecticut General's alleged breach of fiduciary duty. The incomplete information before us makes summary judgment inappropriate on the issues of whether Connecticut General is a fiduciary and whether plaintiffs' claims are barred by the statute of limitations. We decline to reach plaintiffs' claims on the merits or defendant's damages claim until the procedural issues are resolved.[2] Accordingly, we shall deny the pending motions for summary judgment and proceed as scheduled with all procedural and substantive issues at trial.

In an effort to help focus and expedite the testimony required at trial, we find it helpful to frame the issues of fact to be resolved concerning Connecticut General's procedural arguments and to deny outright defendant's claim that Count I is barred by the law of the case.

### 1. Connecticut General's Status as a Fiduciary.

Under ERISA, a person is a fiduciary with respect to a plan to the extent that (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other

---

**2.** Even if we were inclined to reach plaintiffs' claims on the merits, the material facts in dispute preclude summary judgment on these issues. A determination of plaintiffs' claims requires full information concerning the actuarial assumptions used by Connecticut General in allocating the surplus assets, including the employer and employee contributions to the Plan and the income and earnings on those contributions, and the actuarial assumptions used by Connecticut General in calculating the premium for its guaranteed annuity. As a non-party to the prior trial against the Original Defendants, Connecticut General has, and, as discussed *infra* n. 3, is free to dispute the allegedly undisputed figures presented by plaintiffs at the earlier proceeding. Plaintiffs must prove their case against Connecticut General in proceedings to which Connecticut General was a party.

property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Connecticut General argues that it was not an ERISA fiduciary with respect to the sale of its guaranteed annuity to the Plan nor with respect to its actuarial role in calculating the amount and allocation of the surplus assets. Moreover, Connecticut General claims that to the extent it exercised discretionary control over the Plan in matters unrelated to the actuarial calculations in question, plaintiffs should not be allowed to "bootstrap an argument of breach of fiduciary duty in connection with the actuarial calculations ..." to unrelated activity. Defendant's Memorandum in Support of its Post–Discovery Motion for Summary Judgment at 30.

■ In response, plaintiffs have made two arguments. First, plaintiffs allege that Connecticut General had a dual relationship to the Plan. On the one hand, plaintiffs allege that the Company entered into a group annuity contract with Connecticut General under which Connecticut General prepared annual booklets describing the terms of the Plan, prepared amendments to the Plan, and managed and invested the Plan's assets.[3] On the other hand, neither party disputes that Connecticut General served as the Plan's actuary, determining the level of contributions necessary to maintain the Plan on a sound actuarial basis and calculating the amount and division of surplus assets upon termination. Plaintiffs argue that, taken together, Connecticut General's activities mandate a finding that Connecticut General was an ERISA fiduciary.

Second, plaintiffs allege that Connecticut General transcended their usual role as an actuary and became a fiduciary by purposely using an allocation formula that, contrary to the plain language of the Plan, would permit most of the surplus assets to revert to the Company so that the Company would not question Connecticut General's excessively high premium.

We have no doubt that if plaintiffs can prove their allegations, then as a matter of law, Connecticut General is an ERISA fiduciary. Under the plain language of 29 U.S.C. § 1002(21)(A)(i), if plaintiffs can prove that Connecticut General managed and invested the Plan's assets, we need inquire no further and must find that Connecticut General is a fiduciary.[4] *See Mack Boring and Parts v. Meeker Sharkey Moffitt,* 930 F.2d 267, 275 (3d Cir.1991) (quoting Joint Explanatory Statement of the Committee of Conference, H.R.Rep. No. 93–1280, 93rd Con., 2d Sess. 296 (1974)) ("[I]t is understood that assets placed in a separate account managed by an insurance company ... [are plan assets for which] insurance companies are to be responsible under the general fiduciary rules").

■ If the fact-finder determines that Connecticut General did not manage the Plan's assets, then plaintiffs must prove

---

3. Both the district court and Third Circuit found in proceedings against the Original Defendants, that Connecticut General administered the bulk of the Plan's assets. (HUYETT, J., Order and Memorandum Denying the Parties' Cross–Motions for Summary Judgment at 1–9, dated May 19, 1989; *Fechter v. HMW Indus., Inc.,* 879 F.2d 1111, 1114 (3d Cir.1989). Despite plaintiffs' contention, a litigant cannot be foreclosed from litigating issues decided in a prior action to which it was not a party. *See Martin v. Wilks,* 490 U.S. 755, 761–62, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989) (citations omitted) ("A [settlement agreement] among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings."); *Long v. Parker,* 390 F.2d 816, 821 (3d Cir.1968). Due process requires that plain-

tiffs make their case against Connecticut General based on the record adduced against Connecticut General in proceedings in which Connecticut General has had a full opportunity to participate.

4. We find it hard to believe that Connecticut General can dispute this fact given the plain language of the annuity contract. However, Connecticut General must be given an opportunity to establish its relationship to the Plan. We find it equally hard to believe, for purposes of the statute of limitations question, that plaintiffs did not know that Connecticut General was responsible for managing the Plan's assets until 1989, as this contract has been in effect since 1940. *See infra* n. 8.

that Connecticut General exercised "discretionary authority or discretionary responsibility in the administration of [the] plan." 29 U.S.C. § 1002(21)(A)(iii)[5]. We agree that "actuaries ... performing their usual professional functions will ... not be considered fiduciaries ..." within the meaning of ERISA, unless they go beyond their normal roles. *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1150–51 (3d Cir.1989) (quoting Interpretive Bulletin 75–5, 29 C.F.R. § 2509.75–5 (1988)). We also recognize that a mere title, such as that of "actuary," is not important in determining ERISA fiduciary status. *Blatt v. Marshall and Lassman*, 812 F.2d 810, 812 (2d Cir.1987). Rather, the terms "discretionary authority," "discretionary control," and "discretionary responsibility" in § 1002(21)(A) "[speak] to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir.1991); *Price Waterhouse*, 879 F.2d at 1150.

In order to prove that Connecticut General transcended its ordinary role as an actuary, plaintiffs must prove that Connecticut General did more than "give advice to plan trustees and invite reliance on that advice." *Pappas*, 923 F.2d at 535. Plaintiffs must prove that Connecticut General did more than sell its pension plan products to the Plan. *American Fed'n of Unions v. Equitable Life Assur. Soc'y*, 841 F.2d 658, 664 (5th Cir.1988). Plaintiffs must prove that based on all of Connecticut General's "Plan activities," Connecticut General had actual decision-making power over the management of the Plan.[6] Accordingly, Connecticut General's motion for summary judg-

ment on the fiduciary issue is denied and reserved for the fact-finder at trial.

### 2. The Applicable Statute of Limitations.

ERISA sets forth the applicable statute of limitations for alleged breaches of fiduciary duty. The statute provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113(a).

Section 1113 establishes a general six-year limitation period measured from the date of the last action constituting a breach or violation, except in the case of fraud or concealment, in which case the statute runs from the date of discovery of the breach or violation. If, however, a plaintiff has actual knowledge of the breach, the action must be commenced within three years of the time at which the plaintiff learned of the breach. *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 956 (D.C.Cir.1985).

Connecticut General argues that ERISA's three-year limitations period applies in this case because plaintiffs had

---

**5.** 29 U.S.C. § 1002(21)(A)(ii) is inapplicable on these facts.

**6.** We reject Connecticut General's argument that the fact-finder cannot consider all of Connecticut General's "Plan activities" when deciding whether it "exercised discretionary authority" over the Plan. Connecticut General's reliance on *Payonk v. HMW Indus., Inc.*, 883 F.2d 221, 225 (3d Cir.1989), is misplaced. *Payonk* held that an employer who is also a plan administra-

tor wears "two hats" and only assumes fiduciary status when functioning as an administrator rather than an employer. An employer is not a fiduciary when making a business decision to terminate a plan but is a fiduciary while administering the termination. 883 F.2d at 225. All of Connecticut General's alleged activities regarding the plan are administrative and could collectively make Connecticut General a fiduciary.

actual knowledge of all actions taken by Connecticut General not later than 1985. Namely, Connecticut General claims that plaintiffs knew in February, 1985 that 17 percent of the Plan assets would be distributed to Plan participants and that 83 percent of the assets would be distributed to the Company pursuant to actuarial calculations performed by Connecticut General. Similarly, plaintiffs knew in March, 1985 that Connecticut General charged the Plan $17 million to cover the cost of its guaranteed an annuity. Therefore, Connecticut General argues that plaintiffs' claims initiated in July, 1989 are barred by ERISA's three-year statute of limitation which began running in 1985 when plaintiffs learned that Connecticut General was responsible for calculating and allocating the Plan's surplus assets.

■ In response, plaintiffs argue that they lacked actual knowledge of Connecticut General's role in terminating the Plan until 1989 when plaintiffs began to uncover Connecticut General's alleged scheme. While plaintiffs concede that they knew in 1985 that Connecticut General was responsible for allocating the Plan's surplus assets, plaintiffs claim that they did not know that Connecticut General was an ERISA fiduciary who could be held accountable for doctoring its calculations in an effort to protect a $17 million premium. Therefore, plaintiffs argue, that absent proof of actual knowledge, ERISA's six-year limitations period must apply to this case.[7]

We agree with plaintiffs that absent proof of actual knowledge, plaintiffs' claims are governed by ERISA's six-year limitations period. All parties agree that plaintiffs' cause of action accrued upon the alleged improper distribution of the surplus assets in 1985. Therefore, plaintiffs' Second Amended Complaint naming Connecticut General as a party defendant in July, 1989 is well within the six-year limitations period.

■ However, we believe, that if Connecticut General is given an opportunity to prove plaintiffs' actual knowledge, ERISA's three-year limitation period may well govern this action. While Connecticut General's evidence is compelling, the court cannot make the leap of faith necessary to conclude that plaintiffs had actual knowledge of Connecticut General's involvement in the ERISA violations in March, 1985. Actual knowledge is a high standard and unquestionably presents a question of fact to be reserved for the fact-finder. "[I]t is not enough that [plaintiffs have] notice that something [is] awry ...;" in order to invoke ERISA's three-year limitations period, Connecticut General must prove that plaintiffs had "specific knowledge of the actual breach of duty upon which [they] sue]." *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.1987), *cert. dismissed*, 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987).

Under ERISA's three-year statute of limitations, plaintiffs' claims must be analyzed separately since they may accrue at different times. Plaintiffs argue that while they knew that Connecticut General had incorrectly allocated the Plan's surplus assets, they did not know that Connecticut General was a fiduciary who could be held accountable for an incorrect allocation formula. We agree and find that plaintiffs' actual knowledge will turn on a determination of exactly when Connecticut General had become a fiduciary.[8] *See Brock*, 809 F.2d at

---

7. In the alternative, plaintiffs argue that they can demonstrate fraud and concealment, and as such, that their action may be brought within six-years of 1989, the date on which they discovered defendant's involvement in the alleged scheme. Moreover, plaintiffs argue, pursuant to Fed.R.Civ.P. 15(c), that their Third Amended Complaint should relate back to the filing of their original complaint in January, 1987.

8. Relying on *Dameron v. Sinai Hosp. of Baltimore*, 595 F.Supp. 1404, 1411 (D.Md.1984), *aff'd in part, rev'd in part on other grounds*, 815 F.2d

975 (4th Cir.1987) and *Rochester Radiology Assoc. v. Aetna Life Ins. Co.*, 616 F.Supp. 985, 989 (W.D.N.Y.1985), Connecticut General argues that plaintiffs' actual knowledge of the calculation constitutes actual knowledge of plaintiffs' cause of action. This argument is misplaced. There was no question, in *Dameron*, that the plan committee, or in *Rochester Radiology*, that the insurance company managing the plan's assets, were fiduciaries.

On the other hand, we note that should the fact-finder determine that Connecticut General has been a fiduciary since 1940 when it began

754 (holding that although the plaintiff knew more than three years before bringing suit that the pension fund had paid an exaggerated price for property purchased at a foreclosure sale, the plaintiff did not know that the defendants had actually advised the purchase at this price).

■ On the other hand, plaintiffs claim that Connecticut General breached its fiduciary duty by charging an excessive premium cannot accrue until plaintiffs discovered that the premium was excessive. The mere fact that Connecticut General charged a premium for its annuity is insufficient to put plaintiffs on notice of the alleged breach. While all parties agree that Connecticut General had a right to a premium for the guaranteed annuity, it is clear that an insurance company/fiduciary has breached its fiduciary duty if it charges an excessive premium. *See Fink*, 772 F.2d at 956 (holding that while plaintiffs could discern from forms that the plan had lost money on recent investments, plaintiffs could not discern from the forms that the plan trustee had breached his fiduciary duty by failing to investigate the investments before making them).

Given these factual disputes, Connecticut General's motion for summary judgment on the statute of limitations claim must be denied.[9]

*3. Count I is Not Barred by the Law of the Case.*

■ Connecticut General argues that Count I of plaintiffs' Complaint is barred

---

managing the Plan's assets, then under *Dasler* and *Rochester Radiology*, we will have no trouble finding that plaintiffs had actual knowledge as to Counts I and II in March, 1985. *See supra* n. 4.

9. Plaintiffs have failed to show fraud or concealment sufficient to invoke ERISA's six-year limitations period. "Fraud or concealment" refers to steps taken by wrongdoing fiduciaries to cover their tracks rather than mere allegations of fraud. *Radiology Ctr., S.C. v. Stifel, Nicholaus & Co.*, 919 F.2d 1216, 1220 (7th Cir.1990) and *Schaefer v. Arkansas Medical Soc'y*, 853 F.2d 1487, 1491 (8th Cir.1988); *but see Diduck v. Kaszycki & Sons Contractors*, 874 F.2d 912, 919 (2d Cir.1989). Plaintiffs merely assert that Connecticut General concealed its breach by refusing to respond to plaintiffs' requests for information. These allegations are insufficient as a

---

by the Third Circuit holding "that HMW was entitled to a portion of the surplus assets distributed upon termination of the Plan." *Fechter v. HMW, Indus., Inc.*, 879 F.2d 1111, 1117 (3d Cir.1989). While "[a] trial court must proceed in accordance with the terms of the mandate and the law of the case as established on appeal," *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985) (quoting *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948)), preliminary factual findings made for one purpose are not the law of the case with respect to issues of substantive liability. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F.Supp. 1125, 1185 (E.D.Pa.1980). Moreover, a district court is free to decide any issue that was not explicitly or implicitly decided on prior appeal. *Taylor v. United States*, 815 F.2d 249, 252 (3d Cir.1987).

■ The Third Circuit did not render a final and nonappealable decision on the merits of Count I. Nor did the Third Circuit, in the context of a preliminary injunction, have an opportunity to consider all of the evidence now available. While we must apply the Third Circuit's reasoning to the facts now before us, we are free to decide Count I on its merits. Accordingly, Connecticut General's motion for summary judgment on this issue is denied.

## CONCLUSION

In light of the incomplete record before us, summary judgment is inappropriate at

---

matter of law. *See Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir.1982) (questioning whether subsequent assurances can constitute concealment when they do not conceal the means of discovering a cause of action); *Hunt v. Magnell*, 758 F.Supp. 1292, 1298 (D.Minn. 1991).

Additionally, we reject plaintiffs' argument that their Third Amended Complaint relates back to the filing of their original complaint. Under Fed.R.Civ.P. 15(c), an amendment adding a party-defendant relates back only if the plaintiff made a "mistake" misnaming or misidentifying the particular defendant to be sued. *See e.g. Robinson v. Cuyler*, 511 F.Supp. 161, 166 (E.D.Pa.1981). Plaintiffs have clearly not made the type of mistake contemplated by Rule 15(c)(2).

this time. Accordingly, in the interests of justice, and in the interest of securing a complete and expeditious resolution of this already unnecessarily extended litigation, the parties' cross-motions for summary judgment are denied and we will proceed with trial as scheduled.