**ROCHESTER RADIOLOGY ASSOCIATES, P.C., Contractholder, and Arthur J. Segal, M.D., Robert M. Spitzer, M.D., and Kenneth E. Robinson, M.D., Trustees of and Participants in the Rochester Radiology Associates, P.C. Profit-Sharing Plan, Plaintiffs,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant.**

No. CIV–84–742T.

United States District Court,
W.D. New York.

May 14, 1985.

Goldstein, Goldman, Kessler & Underberg, Rochester, N.Y. (Sharon Stiller, Rochester, N.Y., of counsel), for plaintiffs.

Nixon, Hargrave, Devans & Doyle, Rochester, N.Y. (William S. Brandt, Rochester, N.Y., of counsel), Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Miami, Fla. (James F. Jorden, Miami, Fla., of counsel), for defendant.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

This action is before me by way of defendant Aetna's motion for judgment on the pleadings. Plaintiffs have brought three causes of action, sounding in breach of contract, breach of fiduciary duty, and violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Chapter 18, subchapter 1. Defendant has moved to dismiss the action, claiming that it did not breach the contract, there was no common-law fiduciary duty, and the ERISA cause of action is barred by the ERISA statute of limitations. Plaintiffs have cross-moved for summary judgment, although oral argument was heard only on defendant's motion to dismiss. I hold that defendant's motion to dismiss should be granted.

### FACTS

On November 21, 1979, plaintiffs entered into a Group Annuity Contract with Aetna for purposes of funding plaintiffs' retirement income plan. Under Contract Section 4A–1, plaintiffs as contractholders had the right at any time to withdraw funds from Aetna's general asset account to make member withdrawals, transfers, etc. Under Contract Section 9, plaintiffs had the right to discontinue the Contract and receive their account balance. If plaintiffs elected to receive this balance in a lump sum, a Market Value Adjustment was applied to the balance, under Contract Sections 9D–2 and 4B–2(a).

The Market Value Adjustment operated to increase or reduce, depending on prevailing interest rates at the time of a withdrawal, a payment from the Contract so as to approximate the effect of the withdrawal upon Aetna's general asset account's earnings. Section 1A–6 of the Contract provided that the Market Value Adjustment:

> shall be computed by Aetna according to rules and formulas which Aetna shall have established from time to time and

which will be furnished to the Contractholder.

Attached to the Contract was a letter with three exhibits. Exhibit 3 contained the then-current Market Value Adjustment formula. The letter itself stated that any change to the formula would become effective no earlier than ninety days following the date Aetna notified a Contractholder, and then only with respect to withdrawal requests made subsequent to that effective date.

Additionally, Section 8 of the Contract set forth the procedures for amending the Contract. Under Section 8A-3, upon advance notice of not less than 60 days to the Contractholder, Aetna could initiate an amendment to any provision of the Contract for which unilateral amendment procedures were not specifically set forth in Section 8A-2. Any amendment proposed by Aetna under Section 8A-3 would not become effective, however, if the Contractholder notified Aetna in writing, prior to the expiration of the sixty-day notice period, that the amendment was not acceptable to the Contractholder.

In September of 1980, Aetna sent the plaintiffs a letter announcing a change in the Market Value Adjustment formula because of prevailing high interest rates. This change, effective in December, 1980, made the value of any money withdrawn from the contract less, at least during times of high or volatile interest rates.

On June 9, 1983, plaintiffs notified Aetna of their desire to terminate the contract. The new Market Value Adjustment formula was applied to the funds withdrawn upon termination. Plaintiffs subsequently determined that they had received $85,-173.37 less than they would have received had the old Market Value Adjustment formula been applied.

On June 19, 1984 plaintiffs filed their complaint in this action.

## DISCUSSION

### I. Breach of Contract.

Plaintiffs argue that the contract does not provide that the Market Value Adjust-

ment formula can be unilaterally changed by Aetna. Plaintiffs point to paragraph 8A-2 of the contract in which Aetna specifically retained the right to unilaterally change certain contract provisions if it chose to do so, and claim that there is no similar language in the Contract with respect to the Market Value Adjustment formula.

Plaintiffs did not draw the Court's attention to the language in the 1979 letter to which the original formula was attached as Exhibit "3", even though plaintiffs allege in paragraph 14 of their complaint that the exhibits attached to that letter formed a part of the contract. The 1979 letter states that:

Aetna will determine market value adjustments on the basis described in Exhibit 3. This basis will remain in effect until further notice. Any change will become effective no earlier than 90 days following the date Aetna notifies you, and then only with respect to withdrawal requests made subsequent to such effective date.

Plaintiffs argue that in their complaint they relied only upon the exhibits attached to the 1979 letter (and thus attached to the Contract), and not upon the 1979 letter itself. Such an argument is disingenuous at best. The 1979 letter was not merely a cover letter for the exhibits, but was instead an informational letter for Contractholders, with exhibits attached, informing the Contractholder how Aetna computed, *inter alia*, the Market Value Adjustment formula. If plaintiff wishes to rely on the exhibits to the letter, the Court will not ignore the letter itself so that plaintiffs can survive a motion for judgment on the pleadings. As the Seventh Circuit stated in *Chicago Board Options Exchange v. Connecticut General Life Ins. Co.*, 713 F.2d 254, 258 (1983), a case upon which plaintiffs themselves rely greatly, "[w]e will not bend the language of a contract to create an ambiguity when none exists...."

I agree with defendant that Section 1A-6 and the 1979 letter clearly gave Aetna the right to unilaterally modify the Mar-

ket Value Adjustment formula on ninety days advance notice to plaintiffs. In accordance with Section 1A–6 and the 1979 letter, Aetna notified plaintiffs of a modification of the formula by its September, 1980 letter. This revised formula was applied when plaintiffs discontinued the contract more than three years later. Plaintiffs could have avoided the application of the revised formula by terminating the Contract under the existing formula within ninety days of the notification. Because I hold that the modification of the formula was made in accordance with Section 1A–6 of the Contract, I need not reach Aetna's argument that the modification of the formula was a permissible amendment of the Contract in conformance with Section 8A–3 of the Contract, nor need I reach plaintiffs' argument that the December, 1980 letter did not constitute sufficient notification under Section 8A–3.

## II. Breach of Fiduciary Duty.

It is conceivable that Aetna's conduct, although it was in conformity with the Contract, could still amount to a breach of a fiduciary duty established either by common law or by ERISA. Aetna argues, however, that it was not a fiduciary under common law, because under common law, the relationship between an insurance company and its contractholders is contractual. Therefore, the rights and duties of the contracting parties are to be governed and determined by the terms of the policy, and the insurance company is not in any sense a trustee or fiduciary of any particular fund for the contractholder. *See Uhlman v. New York Life Insurance Co.*, 109 N.Y. 421, 429, 17 N.E. 363 (1888); *Equitable Life Assurance Society of the United States v. Brown*, 213 U.S. 25, 46, 29 S.Ct. 404, 410, 53 L.Ed. 682 (1909). Aetna also points to New York Insurance Law Section 4240(12) which provides that:

> [A]mounts allocated by the insurer to separate accounts shall be owned by the insurer, the assets therein shall be the property of the insurer and no insurer by reason of such accounts shall be or hold itself out to be a trustee....

Plaintiffs argue that, because they had a beneficial interest in the funds Aetna was holding, Aetna was at least a constructive trustee with respect to those funds, citing *Sonnenschein v. Reliance Insurance Co.*, 353 F.2d 935 (2d Cir.1965); *U.S. v. AugsPurger*, 452 F.Supp. 659, 668 (W.D.N.Y. 1978); *Diesel Motors Co., Inc. v. Kaye*, 74 Misc.2d 302, 345 N.Y.S.2d 870 (Nassau County Court 1973); *In re Anjopa Paper and Board Mfg. Co.*, 269 F.Supp. 241 (S.D. N.Y.1967); and New York Insurance Law Section 2120(a). Aetna responds that the *Sonnenschein* and *Diesel Motors* cases pertain to the predecessor to New York Insurance Law Section 2120, which makes insurance agents and brokers responsible in a fiduciary capacity for all funds received or collected as insurance agents or brokers, but that the statute and caselaw do not affect Aetna because Aetna was an issuer of insurance contracts, not an insurance agent or broker. Aetna also argues that the *AugsPurger* and *Anjopa Paper* cases involved the imposition of constructive trusts as an equitable remedial tool of the court, but that a constructive trust does not create a fiduciary relationship where none existed before, citing Restatement of Restitution Section 160 Comment a (1937).

Again, I must agree with Aetna. I find nothing in the caselaw or New York statutes to indicate that an insurance company is a fiduciary for its policyholders; in fact, the law appears to be to the contrary. In addition, even if I felt that a constructive trust should be imposed in this case, a constructive trust, unlike an express trust, is not a genuine fiduciary relationship but a remedial device imposed by courts in order to prevent fraud or unjust enrichment. *Matter of Kawczynski*, 442 F.Supp. 413, 416 (W.D.N.Y.1977). A constructive trust cannot itself serve as the basis for a substantive claim or right. *Ashton v. Chrysler Corp.*, 261 F.Supp. 1009 (E.D.N.Y.1965). In order to find a constructive trust there is the critical requirement that a confidential or fiduciary relationship be present. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976);

*Bontecou v. Goldman,* 103 A.D.2d 732, 477 N.Y.S.2d 192 (2d Dept.1984); *Pontillo v. Home Federal Savings & Loan Association of East Rochester,* 57 A.D.2d 1066, 395 N.Y.S.2d 821 (4th Dept.1977). That element is lacking here. If the relationship is not of a confidential or fiduciary nature, so "pregnant with opportunity for abuse and unfairness" as to require equity to intervene and scrutinize the transaction, a constructive trust cannot be imposed. *Bontecou v. Goldman, supra,* 103 A.D.2d at 733, 477 N.Y.S.2d 192, citing *Sharp v. Kozmalski, supra,* 40 N.Y.2d at 123, 386 N.Y.S.2d 72, 351 N.E.2d 721. Accordingly, plaintiffs' second cause of action for breach of a fiduciary duty is also dismissed.

### III. ERISA Violation.

Finally, Aetna argues that the third cause of action (for breach of a fiduciary duty under ERISA) should be dismissed because the statute of limitations for bringing such a cause of action had run. Aetna relies on *Dameron v. Sinai Hospital of Baltimore, Inc.,* 595 F.Supp. 1404, 1411 (D.Md.1984), which held that ERISA's three (3) year statute of limitations begins to run at the time a plaintiff learns of the alleged breach.

ERISA provides for two limitations periods:

> (1) Six years after (A) the date of the last action which constituted a part of the breach or violations, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation ...

whichever is earlier, "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violations." 29 U.S.C. Section 1113.

Although plaintiffs allege in their complaint that Aetna concealed the *consequences* of its 1980 notice, and allege that plaintiffs did not know of Aetna's breach until Aetna actually applied the new formula in 1983, it is clear that plaintiffs had notice of any alleged breach in December, 1980. Aetna's notice, which was mailed September 10, 1980 and effective December 15, 1980, set forth the complete Market Value Adjustment formula. Although the notice did not specify the impact of the change in formula on plaintiffs' funds in particular, it did not conceal the impact: the notice indicated that the revised formula was developed so that those Contractholders who withdrew funds during a time of volatile interest rates would not receive a windfall based on a market value formula which was itself based on an unrealistically low interest rate projection.

█ Thus the general impact of the change in formula was discussed in the notice. It can hardly be said that Aetna concealed any sort of breach from plaintiffs; rather, it appears only that plaintiffs failed to assess the exact impact upon them of the change in formula. Under 29 U.S.C. Section 1113, then, the statute of limitations can be said to have run three years after the earliest date on which the plaintiffs had actual knowledge of the breach or violation. Although plaintiffs claim not to have had knowledge of the effect of the change in formula upon them, they clearly had knowledge of the change itself (which is the alleged breach) in December, 1980. Accordingly, plaintiffs' ERISA cause of action is dismissed as time-barred.

Defendant has also sought leave to amend to assert this ERISA statute of limitations defense. For the reasons set forth in defendant's Reply Memorandum of Law, filed May 6, 1985, Aetna's motion to amend its answer is granted. Aetna's counter-claims, which are in the nature of claims for contribution from the trustees of the retirement plan if Aetna is found to be a "fiduciary" in this action, are dismissed as moot.

SO ORDERED.