Kenneth E. OECHSNER,
et al., Plaintiff,

v.

**CONNELL LIMITED PARTNERSHIP,**
et al., Defendants.

No. 02 Civ. 6638(CM).

United States District Court,
S.D. New York.

Sept. 16, 2003.

Stephen J. Riebling, Jr., Danbury, CT, for plaintiffs.

James R. Carroll, Matthew J. Matule, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, Gregory F. Hauser, Alston & Bird, L.L.P. (N.Y.), New York City, Gregory C. Braden, Michael G. Monnolly, Teresa T. Bonder, Alston & Bird, LLP, Atlanta, GA, for defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

MCMAHON, District Judge.

Plaintiffs Kenneth E. Oechsner, Jacqueline A. Zimmerman, and Robert Newton,

bring claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.;* federal common law; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Plaintiffs seek class action status.

Defendants move collectively for dismissal of all counts against them, on the grounds that all of plaintiffs' claims are barred by the applicable statutes of limitations. Alternatively, defendants seek dismissal of the ERISA and federal common law claims for failure to state a claim.

For the reasons stated below, I now grant defendants' motion to dismiss on the statute of limitations grounds.

## I. Background

### A. Factual Background

The following facts are alleged by plaintiff. For purposes of this motion to dismiss, I accept them as true:

Defendant Cornell Limited Partnership ("CLP") purchased the Industries Products Group of Avondale Industries, Inc. (which compromised six of Avondale's seven divisions), on March 27, 1987, through a leveraged buyout. (Plaintiffs' Complaint ("Cmplt."), 17, 53.) Before the acquisition, Avondale's sole shareholder was the Avondale Employee Stock Ownership Plan ("ESOP"). *Id.* at 17. Shortly before the divestiture, on or about February 25, 1987, the ESOP participants had received an "Information Statement," regarding the proposed asset purchase prepared by William F. Connell, CEO and Chairman of the Board of Directors at Avondale. *Id.* at 17, 18, 37. Plaintiffs contend that in the information statement, Conell/CLP promised and represented that the Industrial Products Group ESOP participants would receive benefits and compensation programs at CLP which were at least on par with the benefits and compensation programs they were receiving at Avondale. *Id.* at 100. Specifically, CLP stated that it "intends, but is not obligated" to provide benefits to certain employees that were "substantially similar" to the plans they participated in at Avondale.[1] *Id.* at 63. Connell also represented to plaintiffs that he was personally investing a majority of his assets in the divestiture, that he needed their support, that if CLP was successful the "Avondale-like" benefit plans would remain intact and they would be compensated appropriately, and that "everyone will benefit from the success of the new company." *Id.* at 130. Relying on the assurances in the information statement and the representations of Connell and others, the ESOP participants voted to approve the divestiture on March 27, 1987, and the transaction immediately followed. *Id.* at 17, 74.

Following the divestiture, Connell announced the establishment of CLP's pension plan, the "Cash Balance Pension Plan," and issued a booklet describing the benefits offered under the new plan. *Id.* at 76. Plaintiffs, former ESOP participants who became participants in the CLP plan, claim that the booklet deliberately deceived them "by marketing the competitive aspects of the new plan and underscoring the power of compound interest … [but] ma[king] no attempt to compare the benefits of this new CLP Pension Plan with the benefits that would have been realized by these same employees had they remained employees of Avondale." *Id.* Additional benefit plans were also established by CLP, including a Profit Sharing

---

1. The parties dispute whether this statement applied to all employees or a specific division of employees. Viewing the facts most favorably to plaintiff, this statement applied to all employees.

and Savings Plan and incentive plans, but plaintiffs contend that these were structured and administered in a manner that resulted in very small contributions to employees. *Id.* at 77–79.

In 1993, CLP amended the Executive Health Plan to eliminate retiree benefits and limit lifetime maximum benefits. Plaintiffs note that "CLP never indicated to any employee that this amendment breached any of the representations in the Information Statement." *Id.* at 80.

Plaintiffs now contend that the divesture was a "fraudulent transaction, devised and concealed by Defendants, that was materially unfair to the participants and Beneficiaries of ESOP." *Id.* at 1. The gravamen of plaintiff's complaint is that the benefits that they received as participants in the CLP plan were *not* "substantially similar" to the benefits they were entitled to as ESOP participants, so the divestiture was not—contrary to what they were told—in their best interests, and the defendants breached their fiduciary duties by advocating it. Plaintiffs contend that the defendants concealed this fraud through a "misinformation campaign" which began with the February, 1987 information statement and continued until at least September, 2001. *Id.* at 75.

Sometime after September 14, 2001, Kathleen A. Murphy, a former employee of Avondale, received a letter from John V. Curtin, CLP's Vice President, regarding CLP's pension-related obligations to the ESOP participants that transferred to CLP after the divestiture. *Id.* at 22. Plaintiffs allege that in the letter, CLP denied that it ever intended to provide substantially similar pension benefits to the Industrial Products Group employees and ESOP participants that transferred to CLP. *Id.* at 75. The named plaintiffs individually learned of this letter from Murphy in July and August of 2002. *Id.* at 21.

Plaintiffs contend that until their illuminating conversations with Murphy, "the fraudulent nature of the divestiture was inherently unknowable to the plaintiffs, and the defendants actively and continuously concealed their fraudulent conduct." *Id.* at 21. Plaintiffs also claim that "[o]nly experienced ERISA professionals, after considerable investigation, could be expected to discover this fraudulent divestiture scheme." *Id.* at 26.

Plaintiffs now bring suit against: CLP; Connell Industries, Inc., the general partner of CLP; the Estate of William F. Connell; Covanta Energy Corporation, f/k/a Ogden Corporation (the owner of Avondale Industries until 1985, when they sold the stock to the ESOP, but "maintained effective control" of Avondale); Avondale Industries, Inc., the Trustees of the Avondale Industries ESOP at the time of the divestiture; and the members of the administrative committee of the Avondale Industries ESOP at the time of the divestiture. *Id.* at 17. Plaintiffs allege that each of the defendants received various benefits from the divestiture, which motivated them to advocate the transaction and conceal from the ESOP participants that it was not in their best interest.

Plaintiffs bring suit claiming that defendants' conduct is actionable under the following theories: (1) the divestiture was a party-in-interest prohibited transaction under ERISA § 406(A); (2) the divestiture was a self-dealing prohibited transaction under ERISA § 406(B); (3) the divestiture was a prohibited inurement in violation of ERISA § 403(c)(1); (4) the defendants breached their fiduciary duties in violation of ERISA §§ 404(A)1(A)-(D); (5) the defendants breached their duties as co-fiduciaries in violation of ERISA § 405; (6) the defendants committed a federal common law breach of contract; (7) the defendants are bound to fulfill their obli-

gations to plaintiffs under the equitable theories of federal promissory estoppel and unjust enrichment; (8) the defendants committed federal common law fraud and deceit; (9) the defendants committed "federal negligent misrepresentation"; (10) the defendants have engaged, and are currently engaging in, a pattern of racketeering activity in violation of federal RICO statutes, 18 U.S.C. §§ 1962, 1954, 1341.

## B. Procedural History

Plaintiffs filed their complaint on August 20, 2002. Covanta Energy Corporation, which is now in bankruptcy, filled an automatic stay of this action pursuant to Section 362 of the Bankruptcy Code on October 16, 2002. Covanta suggested that the action was stayed as to all defendants and asked that the case be referred in its entirety to the Honorable Cornelius Blackshear, who is presiding over Covanta's bankruptcy proceedings. The non-debtor parties opposed that suggestion.

On November 14, 2002, I referred this matter to Judge Blackshear to determine in the first instance whether this matter should be stayed as to all defendants. At a hearing held on December 18, 2002, Judge Blackshear declined to lift the automatic stay as against Covanta, but also declined to extend the automatic stay to the non-debtor defendants via an injunction under 11 U.S.C. § 105.

On January 9, 2003, after being apprized of Judge Blackshear's decision, I withdrew the reference on motion of plaintiff and the non-debtor defendants. I also noted that the filing of this action as against Covanta was void ab initio.

Following the withdrawal of the reference, the defendants filed a joint motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)").

## II. Discussion

### A. Standard on a Motion to Dismiss

■■■■ Rule 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). The court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir.1992) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Defendants' Motion to Dismiss is Granted

Defendants argue that plaintiffs' claims should be dismissed on the basis that (1) all claims are time barred; and (2) as to each proposed cause of action, plaintiffs fail to state a cognizable claim.

#### 1. *Plaintiffs' ERISA Claims are Time Barred.*

ERISA provides that the claims brought by plaintiff under the statute must be brought within the *earlier* of (1) three years of actual knowledge of breach or (2) six years after the date of the last action that caused the breach or, in the case of an omission, the last date on which the fiduciary could have cured the breach. *See* 29 U.S.C. § 1113. ERISA provides an exception to this statute of limitations in the

case of fraud or concealment, and in such cases an ERISA claim will be timely unless commenced later than six years after the date of discovery of such breach or violation. *Id.*

As the defendants note, the Second Circuit has held that the statute of limitations provisions of ERISA require "strict adherence" so that, *inter alia,* disputes can be "rapid[ly]" resolved, potential defendants can be afforded "repose" and "litigation involving lost evidence or distorted testimony of witnesses" can be avoided. *Carey v. Int'l Bhd. of Elec. Workers,* 201 F.3d 44, 47 (2d Cir.1999) (citations omitted).

### a. *Plaintiffs' ERISA Claims Were Not Brought Within Three Years of Actual Knowledge.*

By its terms, ERISA prohibits claims for purported breach of fiduciary duty that are brought "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2). "[A] plaintiff has 'actual knowledge of the breach or violation' ... when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 193 (2d Cir.2001).

■ Dismissal under the 3–year "actual knowledge" limitations period is particularly appropriate here because plaintiffs' claims are each based upon the identical allegation that they:

> voted [their] ESOP shares in favor of the Divestiture based, and in reliance, upon the representations, expressed and implied, that [their] employee benefits and compensation at CLP would be sub-

stantially similar to, or better than, the benefits and compensation programs already being provided by Avondale. (Cmplt., 7–9).

The Complaint demonstrates that there can be *no question* that plaintiffs had all of the relevant information regarding the "substantial similarity" (or dissimilarity) of their plans available to them no later than July 1987—fifteen years prior to bringing this action:

● Each of the plaintiffs were "salaried employees of the Industrial Products Group" who participated in the Avondale ESOP and its Pension Plan, Performance Share Plan, Stock Appreciation Plan and Health Insurance Plan. (Cmplt.61.)

● The Information Statement was provided to the ESOP Participants more than a month prior to the March 27, 1987 special meeting of ESOP Participants—and expressly stated that CLP "intends, but is not obligated to," establish or maintain any benefit plans after the Divestiture closed. (Cmplt.17, 62.)

● On July 6, 1987—just over three months after the Divestiture was approved—CLP "announced the establishment of CLP's Pension Plan" and provided the terms of it and other CLP benefit plans to the new CLP employees at or about the same time. (Cmplt., 76, 78–80.)

■ Similarly, the Information Statement placed plaintiffs on specific notice of all of the facts underlying their "prohibited transaction," "prohibited inurement," and fiduciary claims: [2]

---

**2.** On a motion to dismiss, the Court may consider documents incorporated by reference into the plaintiff's complaint and those where the terms and effect are relied upon by the plaintiff in drafting the complaint. *Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC,* 298 F.3d 136, 140 (2d Cir.2002).

- The Divestiture was described in detail and the "consideration" including purchase price and other terms were disclosed numerous times throughout the Information Statement. (Information Statement at 1, 3, 4, 6, 7, 24, 25, 28, 30, 31, 41.) Obviously, plaintiffs were on clear notice of the "facts" upon which they base their "adequate consideration," "corporate law duties," and breach of ERISA fiduciary duty claims.

- Plaintiffs were specifically advised that the sale proceeds would *not* be used to pay down the ESOP debt and plaintiffs would receive no additional ESOP allocations as a result of the Divestiture. (Information Statement at 32, 43, 46.) Thus, plaintiffs also were on clear notice of the "facts" upon which they base their misrepresentation claim.

Because of plaintiffs' actual knowledge, the statute of limitations for plaintiffs' alleged ERISA breaches of fiduciary duty expired July 1990—more than 12 years before plaintiffs commenced this untimely lawsuit. *See Rochester Radiology Assocs. v. Aetna Life Ins. Co.*, 616 F.Supp. 985 (W.D.N.Y.1985) (granting motion for judgment on the pleadings and dismissing breach of fiduciary duty claims because plaintiffs had actual knowledge of plan changes more than three years prior to filing suit).

b. *The Fraud or Concealment Exception Does Not Apply.*

Plaintiffs attempt to overcome their statute of limitations problems by arguing that the fraud or concealment exception applies, because they did not have actual knowledge of the ERISA claims until their respective conversations with Murphy, in July and August of 2002. Plaintiffs allege that the following "acts" of fraudulent concealment made the nature of the divestiture "inherently unknowable" to the plaintiffs until that time: (1) various divestiture related reports prepared by the independent fiduciary and legal and financial experts were not provided to the ESOP participants; (2) the divestiture was extremely complex and designed, in part, to conceal the fraud; (3) CLP did not pay fair market value for the industrial assets; (4) CLP financial statements were withheld from employees; (5) two of the three ESOP trustees had no incentive to correct a wrong or divulge facts that would alert employees to the fraud and fraudulent concealment; (6) after the divestiture, CLP implemented a "sophisticated misinformation campaign designed to conceal the fraud and the Connell Defendants' failure to cure the fraud" by, *inter alia,* issuing annual letters to the former ESOP participants which described the CLP plans as "better-than-competitive" or "competitive;" and (7) CLP extracted general releases and covenants not to sue from departing or retiring employees. *Id.* at 134.

■ Generically pleading unspecified false statements by "Connell and others" allegedly made to "various employees" at "various meetings" clearly does not satisfy the time, place, speaker and content requirements necessary for allegations of fraudulent concealment pursuant to Rule 9(b). *Losquadro v. FGH Realty Credit Corp.*, 959 F.Supp. 152, 157 (E.D.N.Y.1997) (applying Rule 9(b) and determining that "plaintiffs have failed to allege facts sufficient to warrant application of the 'fraud or concealment' exception to the statute of limitations set forth in section 1113"). Nor can plaintiffs state a claim based upon the mere characterization that the divestiture was "motivated by management greed and sold to the ESOP Participants through

fraud, concealment and trickery." (Cmplt. 20; *see also Caputo,* 267 F.3d at 191).

None of the "fraudulent" acts alleged by plaintiffs concealed anything about the specifics of the benefits under the plan that they began receiving in July 1987. Despite plaintiffs' broad claim that defendants undertook a "misinformation campaign," plaintiffs fail to allege that defendants concealed any relevant information regarding the benefits plaintiffs received as CLP employees. Instead, plaintiffs essentially allege that defendants did not provide them with a side-by-side comparison of the two benefits plans. (Cmplt, 76.) Obviously, defendants' failure to do so does not constitute fraudulent concealment.

The essence of plaintiffs' allegations is that they were tricked into voting for the divestiture by unspecified representations "express and implied" that they would have the same employee benefits. However, the Information Statement itself bluntly told the plaintiffs that CLP "is not obligated" to provide comparable benefits plans. Thus, even if the unspecified "representations" in the complaint are elevated to the level of clear promises about future benefits—which they expressly were not—the Information Statement placed plaintiffs on notice that the Connell defendants reserved the right to abrogate any such "promises."

c. *Because the Three–Year Statute of Limitations Ran in 1990, the Alternative Six–Year Statute of Limitations Has No Bearing in this Case.*

Defendants argue in the alternative that even if the plaintiffs did not have actual knowledge of the facts which form the basis for their ERISA claims within three years, their claims fail under the other prong of the statute's limitations period—which provides that an action is untimely

six years after the date of the last action that caused the breach or, in the case of an omission, the last date on which the fiduciary could have cured the breach. *See* 29 U.S.C. § 1113. Plaintiffs dispute that this limitations period is applicable to their claim.

An ERISA claim will be untimely if it is not brought within the earlier of the two-prong limitations period. *See* 29 U.S.C. § 1113. Because I have found that, on the facts most favorable to the plaintiffs, plaintiffs ERISA claims are clearly untimely based on the three year prong, there is no need for an extended discussion of the applicability of the six-year prong.

2. *Plaintiff's Civil RICO Claims are Time–Barred and Conclusory.*

■ The Supreme Court has interpreted the Civil RICO statute to have a four-year limitations period. *Rotella v. Wood,* 528 U.S. 549, 553, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). The four year period begins to run when the plaintiff discovers or should have discovered the RICO injury. *Id.; Tran v. Alphonse Hotel Corp.,* 281 F.3d 23, 35 (2d Cir.2002).

■ Assuming *arguendo* that the divestiture of Avondale was, as plaintiffs allege, a violation of the Civil RICO statutes, plaintiffs' claim was time barred in 1991— four years after the plaintiffs became participants in the CLP benefit plans and had all the information necessary to know that they had been "injured." The statute of limitations for this cause of action could have been tolled if the plaintiffs had established both that there was fraudulent concealment of the violation and that the plaintiffs exercised due diligence to discover the claim. *Tran,* 281 F.3d at 36. But, as discussed above, plaintiffs have failed to allege that the defendants fraudulently concealed information regarding the bene-

fit plans plaintiffs received in 1987. *See* Section II.B.(1)(b), *supra.*

Furthermore, plaintiffs' conclusory allegations of fraud fail to meet the pleading requirements of Fed.R.Civ.P. 9(b). Courts in this District have recognized that there is a particular need in Civil RICO claims for plaintiffs to comply with the requirements of Fed.R.Civ.P. 9(b), and have dismissed conclusory RICO claims. *See e.g., First Capital Asset Mgmt. v. Brickelbush,* 150 F.Supp.2d 624, 631 (S.D.N.Y.2001); *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y.1996); *Morin v. Trupin,* 778 F.Supp. 711, 715 (S.D.N.Y.1991); *Int'l Tel. v. Genereadora Elec.,* 2002 WL 465291, at *7 (S.D.N.Y. Mar.27, 2002). Plaintiffs' RICO claims fail to meet the requirements of Fed.R.Civ.P. 9(b).

### 3. *Plaintiffs' "Federal Common Law" Claims Must be Dismissed and Are in Any Event Time-Barred.*

■ Plaintiffs purport to bring claims under "Federal Common Law" for breach of contract, promissory estoppel, fraud and deceit, and negligent misrepresentation. Plaintiffs argue that these claims are not preempted by ERISA because ERISA is not adequate to protect against the wrongs suffered by plaintiffs. Plaintiffs advance several theories as to how their federal common law claims supplement ERISA's remedial scheme. Plaintiffs then warn that, if the Court fails to recognizes their federal common law claims, it will "trivialize ERISA, [ ] condone and encourage future ERISA egregious violations, and [ ] render Congress's federal law making authority 'toothless.' "

ERISA provides the exclusive remedy for pursing plaintiffs' duplicative federal common law claims. This proposition is clearly supported by controlling law. In *Gerosa v. Savasta & Co.,* the Second Circuit recognized that "[t]wice in its most recent term, the [Supreme] Court has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive." 329 F.3d 317, 322 (2d Cir. 2003). The Second Circuit concluded that there was "little room in this framework for judicially-created 'interstitial' remedies." *Id.* at 322.

However, assuming *arguendo* that ERISA were not the exclusive remedy for plaintiffs, their claims would be time-barred under all possible state statutes.

■ For a federal claim where there is no relevant federal statute of limitations, the controlling period is generally the one provided by the most applicable state law cause of action in the forum state. *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *King v. American Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir. 2002). A New York State court, regardless of whether it applied New York law or Massachusetts law, would inevitably conclude that all claims were barred by the applicable statute of limitations.[3] *See* N.Y. CPLR § 213 (6 year statute of limitations for breach of contract, fraud, and actions for which no other limitation is specifically prescribed); *Fandy Corp. v. Lung–Fong Chen,* 262 A.D.2d 352, 691 N.Y.S.2d 572, 573 (N.Y.App. Div.2d Dep't 1999) (6 year statute of limitations under N.Y. CPLR § 213 applies to negligent misrepresenta-

---

**3.** Defendants assume Massachusetts law would apply, presumably because CLP is headquartered in Boston, Massachusetts. Plaintiffs assume that New York law would apply. This Court does not need to consider the choice of law issue—which is not briefed by the parties—because all claims are untimely in both jurisdictions.

tion and all other general equitable actions); Mass. Gen. Laws Ch. 260 § 2 (2 year statute of limitations for breach of express or implied contract); *Massad v. Flagg,* Civ. A. No. 91–2346, 1994 WL 879776 at *1 (Mass.Super.Ct. June 1994) (2 year statute of limitations under Mass. Gen. Laws Ch. 260 § 2 applies to promissory estoppel claims); Mass. Gen. Laws Ch. 260 § 2A (3 year statute of limitations for all tort actions). Because plaintiffs' claims accrued in 1987, when they became participants in the CLP benefits plans and were able to compare exactly how their benefits differed from those they had received as Avondale employees, all of their "federal common law" causes of action are time barred.

## III. Conclusion

The Clerk of the Court is directed to close the case.

This constitutes the decision and order of the court.