James WATSON, Joseph Avitabile, Thomas McGlade, Joseph Keelin, and Robert Sheehan, Plaintiffs,

v.

CONSOLIDATED EDISON OF NEW YORK and The Consolidated Edison Pension and Benefits Plan, Defendants.

No. 08 CV 4436(JSR).

United States District Court, S.D. New York.

Aug. 19, 2009.

James Evan Tullman, Joseph Harry Weiss, David Corey Katz, Weiss & Lurie, New York, NY, Lenard Leeds, Matthew Ian Marks, Leeds, Morelli, & Brown, P.C., Carle Place, NY, for Plaintiffs.

Deidre Ann Grossman, Myron D. Rumeld, Amanda Dealy Haverstick, Proskauer Rose LLP, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiffs, participants in the Consolidated Edison Pension and Benefits Plan (the

"Plan"), bring suit against the Plan and Consolidated Edison of New York, alleging that defendants, in breach of the fiduciary duties and disclosure requirements imposed upon them by the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, reduced plaintiffs' retirement benefits. Defendants now move for summary judgment.

In assessing the motion, the Court considers only those facts supported by competent evidence. Thus, plaintiffs' heavy reliance on allegations of the First Amended Complaint is misplaced to the extent such allegations are unsupported by admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Subject to this limitation, the pertinent facts, either undisputed or, where disputed, taken most favorably to plaintiffs, are as follows.

The Plan is a defined benefits plan governed by ERISA and funded by Consolidated Edison. Defendants' Local Civil Rule 56.1 Statement of Material Facts as to Which There is No Dispute ("Def. 56.1") ¶¶ 1, 18; Plaintiffs' Response to Defendants' Statement of Material Facts and Plaintiffs' Counter Statement of Material Facts to Which There Exist General Issues to Be Tried Pursuant to Local Civil Rule 56.1 ("Pl. 56.1") ¶¶ 1, 18. The Plan permits participants to choose among several pay-out options. *See* Affidavit of Hector J. Reyes ("Reyes Aff") Ex. A at 79, 80; Ex. E at 59, 65. One of these options, the "Level Income Option," was added on December 1, 1996 as a result of collective bargaining negotiations between Consolidated Edison and its employees' Union. *Id.* Ex. B at 78. Under the Level Income Option, participants retiring before they become eligible for Social Security benefits receive larger monthly payments before their Social Security benefits kick in and smaller monthly payments from the Plan

thereafter, so that the total monthly payment they receive from the two sources remains level throughout retirement: hence, the name "Level Income Option." *Id.* The interest rates and mortality tables used to calculate payments under this option are set forth in the Union's 1996 Collective Bargaining Contract. *Id.*

Over the years, Plan participants considering the Level Income Option received various disclosures. Of relevance here, a Summary of Material Modifications ("SMM") describing the Level Income Option was mailed to Plan participants at their work locations in July 1997. Reyes Aff. ¶ 6, Ex. C. Although plaintiffs Watson, Sheehan, and McGlade claim not to have received it, *see* Declaration of Deidre A. Grossman, Esq. ("Grossman Decl.") Ex. A at 154–55; Ex. C at 198; Ex. B at 136, it stated, *inter alia,* that "[w]hen you reach age 62 or your normal Social Security retirement age, the higher pension benefit amount is reduced to reflect the commencement of your Social Security benefits." Reyes Aff. Ex. C. at 2. The SMM also provided an illustration of how the Level Income Option worked, noting that "at age 62, the monthly pension amount decreases and is combined with Social Security to achieve a level monthly income." *Id.* at 3.

In December 2002, the Plan issued a new Summary Plan Description ("SPD"). In describing the Level Income Option, Reyes Aff. Ex. E, the SPD noted that "[a]fter you reach age 62 or 65, and you begin receiving your Social Security benefits, your monthly pension total is permanently reduced," and that "[t]he level income option ends at the time of your death." Reyes Aff. Ex. E at 66. The SPD was mailed to all Consolidated Edison employees and subsequently was made available on Consolidated Edison's internal website. *Id.* ¶ 9. Plaintiffs Avitabile and

Keelin aver, however, that they did not receive the SPD. Grossman Decl. Ex. D at 91–92; Declaration of Joshua M. Rubin ("Rubin Decl.") Ex. J at 52.

The Plan participants, in considering the Level Income Option and other options, could also calculate their projected benefits under the Plan by using an online Pension Calculation System called "Pencalc." Grossman Decl. Ex. D. For an employer considering the Level Income Option, Pencalc showed the level amount of the pension benefit both before and after age 62 or Social Security retirement age. Amended Class Action Complaint ("Compl.") Ex. D.

During the time period relevant to all plaintiffs, Consolidated Edison also periodically offered "Life Planning Seminars" for its employees explaining various pension payment options. Grossman Decl. Ex. G at 39, 48–56. With respect to the Level Income Option, a slide stated that "[a]fter reaching age 62 or Normal Social Security Retirement Age, pension benefits are permanently *reduced.*" *Id.* Ex. L at 2 (emphasis in original).

Also during this time period, employees planning to retire attended Group Retirement Interviews ("GRIs"). Reyes Aff. ¶ 11. During the GRI, employees were provided with an election form to complete and sign that set forth the various amounts of pension payments that a Plan participant could receive. Compl. Ex. C. For the Level Income Option, figures were provided for the "Monthly Benefit to Age 62" and "Monthly Benefit after Age 62." *Id.* Before completing and signing the election form, participants were instructed to "read carefully" the attached "Summary," which noted that the Level Income Option

provide[s] a level income to you from your retirement date to death.... You receive a higher pension benefit from the date of your retirement to your choice of Age 62 or Normal Social Secu-

rity Retirement Age, and a lower pension benefit thereafter.

Upon your death, your surviving spouse will receive, for life, a pension benefit based on the amount of the pension benefit you would have been receiving before any adjustment under the level income option.

*Id.* Ex. A. All five named plaintiffs admit that they received the election form and Summary at their respective GRIs. Def. 56.1 ¶¶ 14, 16; Pl. 56.1 ¶¶ 14, 16. They nevertheless aver that they were led to believe that the reductions in Plan payments made to them after they began receiving social security were not permanent and would cease at some point.

■ Against this background, defendants first argue that all claims asserted by plaintiffs James Watson, Thomas McGlade, and Robert Sheehan are time-barred. ERISA has a six-year statute of limitations. 29 U.S.C. § 1113. Because plaintiffs Watson, McGlade, and Sheehan retired in 1999 and began receiving pensions as of January 1, 2000, the six-year limitations period for their claims commenced no later than January 1, 2000, but their instant claims were not brought until 2008, that is, beyond the limitations period.

■ All claims brought by these plaintiffs are therefore time-barred unless they qualify for the so-called "concealment" exception, pursuant to which a plaintiff is induced by fraudulent representations not to bring the ERISA claims he otherwise would have brought—in which case the limitations period runs for six years from the time such plaintiff discovered the fraud. *See Watson v. Consol. Edison of N.Y.,* 594 F.Supp.2d 399, 411 (S.D.N.Y.2009). At the summary judgment stage, a plaintiff seeking to invoke the "fraud or concealment" exception must offer evidence in support of each element of common law fraud, including "(1) a ma-

terial false representation or omission of an existing fact; (2) knowledge of falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001); *see Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir.1992).

None of the three plaintiffs whose claims would otherwise be time-barred has been able to adduce admissible evidence that, even when construed most favorably to plaintiff, remotely qualifies for the fraud or concealment exception. Although plaintiff Sheehan testified at his deposition that he was told that the Level Income Option operated as a loan that would be paid off with no interest, Grossman Decl. Ex. C at 95, 124–25, he nevertheless conceded that he was never told when the "loan" would be paid back or when the reductions would end. *Id.* Instead, he merely inferred that the loan would be paid back when the amount of past-social security reductions equalled the amount of pre-social security increases. *Id.* Ex. C at 95. Plaintiffs Watson and McGlade, at their depositions, likewise acknowledged that they were never told that the reduction in their pension payments would only be temporary; instead, they simply assumed that that was how the program operated. *See id.* Ex. A at 101–02, 118, 160 (Watson); *id.* Ex. B at 82, 139–42, 152 (McGlade). Thus, such statements as were made were too vague to warrant reasonable reliance. *See Adams v. Niagara Mohawk Power Corp.*, 02 Civ. 1353, 2008 WL 4527694, at *5 (N.D.N.Y. Sept. 30, 2008) (alleged oral misrepresentations about benefits were too vague to have "induced a reasonable person to rely on them").

■ Furthermore, even if (contrary to fact) there was meaningful evidence of oral misrepresentations concerning the terms of the Level Income Option, it would be entirely immaterial in light of the clear and unambiguous written information provided to plaintiffs. This included, at a minimum, the election form and Summary that each plaintiff admittedly received, which provided detailed and accurate information concerning the operation of the Level Income Option, including the fact that the level would remain constant until death. *See Adams*, 2008 WL 4527694, at *5 (oral misrepresentations about benefits not material because plaintiffs had other information minimizing their effect); *Rochester Radiology Assoc., P.C. v. Aetna Life Ins. Co.*, 616 F.Supp. 985, 989 (W.D.N.Y.1985) (same). Indeed, plaintiffs themselves conceded at their depositions that their understanding of how the Level Income Option worked was at odds with the plain language of these materials and that the language used by defendants made clear that any reduction in pension payments after social security began was permanent. *See, e.g.*, Grossman Decl. Ex. A at 164–65 (Watson); *id.* Ex. B. at 127–28, 135–36 (McGlade); *id.* Ex. C at 224 (Sheehan); *see also Oechsner v. Connell Ltd. P'ship*, 283 F.Supp.2d 926, 932, 934 (S.D.N.Y.2003) (dismissing claims of "fraud and concealment," where "even if the unspecified representations in the complaint are elevated to the level of clear promises about future benefits—which they are not—the Information Statement placed plaintiffs on notice that the [ ] defendants reserved the right to abrogate any such promises").[1]

As to defendants' alleged fraudulent intent, plaintiffs argue that Consolidated Edison was motivated to fraudulently induce plaintiffs to use the Level Income Option so as to induce participants into early re-

---

1. Although plaintiffs sought to proffer expert testimony that the written materials were inadequate, whether a disclosure is clear and unambiguous is, in this context, a matter of law and therefore not a proper subject of expert testimony. *Cf. Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir.1992).

tirement and so as to profit from the 7.5% interest rate charged under the option, which allegedly violated Internal Revenue Code § 417. It is undisputed, however, that Consolidated Edison's early retirement program was not initiated until 1999, *see* Grossman Decl. F, three years after the Level Income Option was created. Without any link between the creation of the Level Income Option and the initiation of the early retirement program, any purported incentive for Consolidated Edison to reduce its workforce cannot serve as an adequate basis for inferring fraudulent intent. Likewise, the record is devoid of any evidence indicating that defendants were motivated by the profits that could be realized under the applicable interest rate; instead, to the contrary, the evidence indisputably shows that the 7.5% rate was the product of negotiations between Consolidated Edison and the Union and its actuaries in an effort to ensure that the Level Income Option was actuarially equivalent to the normal pension benefits. Reyes Aff. Ex. B at 78.

Accordingly, because plaintiffs Watson, McGlade, and Sheehan have failed to offer adequate evidence of either fraud or concealment, they cannot invoke the fraud or concealment exception to the statute of limitations, thus rendering all three plaintiffs' claims time-barred.

The claims of the other two plaintiffs, Joseph Avitabile and Joseph Keelin, cannot survive summary judgment on the merits. Indeed, quite aside from any time bar, this is equally true in the case of the other three named plaintiffs as well.

■■■ Under ERISA, employers are required to furnish employees "with complete and accurate information" about their retirement options. *Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997). "To establish a breach of fiduciary duty based on alleged misrepresentations about coverage under an ERISA plan," a

plaintiff "must show that (1) Defendants were acting in a fiduciary capacity and that (2) they made a material misrepresentation or omission (3) on which Plaintiff relied to her detriment." *Bell v. Pfizer, Inc.*, 499 F.Supp.2d 404, 410 (S.D.N.Y. 2007). For a misrepresentation to be material, there must be a "substantial likelihood that [it] would mislead a reasonable employee in making an adequately informed decision." *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 123 (2d Cir.1997).

■■■ Here, plaintiffs Avitabile and Keelin, like plaintiffs Watson, McGlade, and Sheehan, merely assumed that the reduction in their pension payments would only be temporary, rather than receiving any express representations regarding that fact. *See* Grossman Decl. Ex. D at 141–42 (Avitabile); *id.* Ex. E at 119 (Keelin). Further, as previously noted, it is undisputed that all five plaintiffs received clear and unambiguous written information that accurately described the Level Income Option and indicated that the reduced payments would continue "until death." These (and other) accurate written communications rendered any inconsistent oral representations (assuming, *arguendo,* that there were any) entirely immaterial, because plaintiffs had full notice of their benefit rights and could not reasonably have been misled by anything to the contrary. *Adams v. Tetley USA, Inc.*, 363 F.Supp.2d 94, 109 (D.Conn.2005) (holding that plan beneficiaries could not have reasonably relied on any alleged oral misrepresentations in light of a signed severance agreement containing information to the contrary); *see also Ballone,* 109 F.3d at 126; *Adams,* 2008 WL 4527694, at *5.

Plaintiffs Avitabile and Keelin now argue that, at their respective GRIs, they were forced to immediately make their pension elections, prevented from asking questions, and refused any explanation of the Level Income Option. An even curso-

ry reading of these plaintiffs' deposition testimony, however, shows that well *before* attending their respective GRI meetings, they had fully evaluated their options (using the Pencalc system) and had already decided to elect the Level Income Option, thus rendering any failings at the GRI immaterial. *See* Grossman Decl. Ex. D at 15–16, 114–15, 129 (Avitabile); *id.* Ex. E at 90–92, Rubin Decl. Ex. J at 90 (Keelin). Indeed, Avitabile testified that he asked no questions at the GRI because he already "knew what [he] thought [he] needed to know," Grossman Decl. Ex. D at 129, and Keelin testified that he was not concerned about what he would receive after reaching Social Security age. *Id.* Ex. E at 154.

In short, given the clarity of the written materials provided to plaintiffs and the overall absence of any material oral misrepresentations, none of plaintiffs' claims of breach of fiduciary duty can stand. *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *see Frahm v. Equitable Life Assurance Soc'y of the U.S.,* 137 F.3d 955, 960 (7th Cir.1998); *Ladouceur v. Credit Lyonnais,* 04 Civ. 2773, 2007 WL 2456641, at *6 (S.D.N.Y. Aug. 21, 2007).

Summary judgment is likewise warranted as to plaintiffs' remaining claims for violations of ERISA's reporting and disclosure requirements.

 Under ERISA, an administrator must "make reasonable efforts to ensure each plan participant's receipt of the plan documents." *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.,* 404 F.3d 167, 171 (2d Cir.2005), and one of plaintiffs' remaining claims is that defendants failed to take adequate steps to ensure that they received the SMM (in the case of Watson, McGlade, and Sheehan) or the SPD (in the case of Avitabile and Keelin). As noted, however, it is undisputed that defendants distributed the 1997 SMM and the 2002 SPD to each Consolidated Edison employee at their worksite, and subsequently posted the SPD on Consolidated Edison's internal website. Even crediting plaintiffs' contention that they did not actually receive the SMM or SPD, defendants' efforts nevertheless amount to "reasonable efforts" sufficient to satisfy ERISA's disclosure requirements. *See, e.g., Campbell v. Emery Air Freight Corp.,* No. 93–6568, 1995 WL 286722, at *1 (E.D.Pa. May 9, 1995) (regulations "require employee benefit plans to prove they sent the SPD's, but not that the participants received them"); *Aiello v. Midwest Operating Engineers Health & Welfare Fund,* No. 91 C 7998, 1993 WL 81437, at *3 (N.D.Ill. Mar. 19, 1993) (ERISA does not require plan to verify that participants received the SPD); *In re Burks,* No. 89–A–228, 1990 WL 71379, at *3 (D.Col. May 23, 1990) (inferring from regular business practice that Plan sent the SPD). Plaintiffs rely on *Simeon v. Mount Sinai Medical Center,* 150 F.Supp.2d 598, 603 (S.D.N.Y.2001) for the proposition that participants' actual receipt of the SMM or SPD is necessary in order to satisfy ERISA's reporting and disclosure requirements. That case actually held, however, that at the motion to dismiss stage, the Court could not consider matters (such as evidence of notice via certified mail) that were not alleged on the face of the Complaint, and that even if the Court could consider such evidence, defendants only provided plaintiffs with a certified letter that inadequately described the plan, instead of a detailed SMM or SPD. *Id.* at 603. By contrast, the SMM and SPD fully described the Level Income Option, with the SPD even going so far as to emphasize that, upon commencement of Social Security payments, a participant's "monthly pension is permanently reduced." [2]

2. Plaintiffs also contend that the posting of the SPD on defendants' internal website was

Plaintiffs' final claim alleges violations of ERISA regulations that require pension plans to provide employees with a statement comparing the actuarial present values of optional forms of benefit to the present value of the standard plan. Plaintiffs, though, have not disputed that the actuarial value of the Level Income Option payments were equal to the value of other benefits. To the contrary, the undisputed evidence shows that plaintiffs' Collective Bargaining Agreement set forth the interest rate and mortality tables used to ensure that payments under the Level Income Option were actuarially equivalent to any other payment options. Thus, without any evidence that the Level Income Option was not actuarially equivalent to other plans, there was no "unequal value" to disclose.

Moreover, even assuming (contrary to fact) that defendants did somehow fail to comply with ERISA's disclosure requirements, plaintiffs have failed to demonstrate any "likely prejudice," a necessary precondition for a finding of a violation of ERISA's disclosure requirements. *Burke v. Kodak Ret. Income Plan,* 336 F.3d 103, 113 (2d Cir.2003); *see Weinreb,* 404 F.3d at 171 (no likely prejudice where, notwithstanding defendant's failure to distribute the SPD, plaintiff had actual knowledge of plan details). Here, it is undisputed that both Avitabile and Keelin used the Pencalc system to calculate their retirement benefits, and that all plaintiffs were provided with and executed an election form with an attached Summary, both of which described the Level Income Option together with various other options, thus indicating that plaintiffs were reasonably apprised of all relevant details concerning the Level Income Option.

Accordingly, for each and all of the foregoing reasons, defendants' motion for summary judgment is granted.[3] The Clerk of the Court is directed to close document number 32 on the Court's docket, and to enter final judgment dismissing all of plaintiffs' claims with prejudice.

SO ORDERED.

---

insufficient, but this argument is directly contradicted by applicable regulations. *See* 29 C.F.R. § 2520.104b–1(c) ("the administrator an employee benefit plan furnishing documents through electronic media is deemed to satisfy" ERISA's disclosure requirements).

**3.** The Court need not consider defendants' remaining argument that the claims of Watson, Sheehan, and McGlade were released by prior settlement agreements.